UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE FURMAN

------------------------------X

NADJARI REID,

Plaintiff,

13 CV 1707

-against-

COMPLAINT

RECEIVED MAR 14 2013 U.S.D.C. S.D. N.Y. CASHIERS

CITY OF NEW YORK,
TYRONE VIRUET, and UC 0093,

Defendants.

PLAINTIFF DEMANDS A TRIAL BY JURY

------------------------------X

Plaintiff Nadjari Reid, by his attorneys, Reibman & Weiner, as for his complaint against the defendants, allege, upon information and belief, as follows:

## PARTIES, JURISDICTION and VENUE

1. At all relevant times herein, plaintiff Nadjari Reid was an adult male resident of New York County, in the City and State of New York.

2. At all relevant times herein, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and its employees.

3. Upon information and belief, defendant Tyrone Viruet, whose shield number was 05654, was at all relevant times herein employed by the City of New York as a member of the NYPD and was assigned to the Narcotic Boro Manhattan North ("NBMN"), which is part of the Narcotics Division. Viruet is being sued in both his official and individual capacities.

4. Upon information and belief, defendant UC 0093 was at all relevant times herein employed by the City of New York as a member of the NYPD and was assigned to the NBMN. The true identity of UC 0093 is known to Viruet and other members of the NYPD but is not publicly available and is not discoverable by plaintiff. UC 0093 is being sued in both his or her official and individual capacities.

5. Upon information and belief, at all relevant times herein each of the individual defendants were state actors acting in the course of their employment with the NYPD under color of law.

6. Original jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, *et seq.*, and 42 U.S.C. §§ 1981 and 1983. The Court has jurisdiction over the state claims under the legal principles of supplemental jurisdiction.

7. Venue is properly laid in this District pursuant to 28 U.S.C. §1391, *et seq.*, because the events complained of herein occurred within the Southern District of New York, and because it is the district of residence for at least the majority the plaintiffs.

8. Plaintiffs have complied with all of obligations, requirements and conditions precedent to commencing an action against New York City under New York law.

## FACTUAL ALLEGATIONS

9. On August 21, 2010, at or about 7:20 p.m., the plaintiff was lawfully present at or near the intersection of East 104 Street and First Avenue in New York County

when he was seized by a number of NYPD officers. Plaintiff was handcuffed, taken into custody and transported to a local area NYPD station house.

10. Plaintiff was held at the station house for a period of time before he was transferred to New York County Central Booking.

11. Defendant Viruet swore out a criminal complaint against plaintiff in which he alleged that plaintiff sold UC 0093 four bags of "crack/cocaine."

12. Plaintiff had not engaged in the criminal conduct sworn to by Viruet and these allegations were materially false.

13. Viruet and UC 0093 both knew and understood that the factual allegations against plaintiff were materially false at the time they were made.

14. The defendants created or caused the creation of paperwork memorializing these false allegations with the understanding that the false allegations would be transmitted to the New York District Attorney ("NYDA") so that the NYDA could commence the criminal prosecution of the plaintiff.

15. The false allegations were then, in fact, transmitted or otherwise communicated to the NYDA and the NYDA, relying on the truth of the allegations, then commenced a criminal prosecution against the plaintiff under docket 2010 NY 062489.

16. The defendants' presentation of the false allegations and fabricated evidence were the proximate cause of the NYDA's decision to commence the prosecution of the plaintiff.

17. Plaintiff, who had been held in defendants' custody since the time of his arrest on August 21, was arraigned August 22, 2010, on charges that plaintiff had sold narcotics and that he had done so in the vicinity of school grounds. The criminal court set bail. Plaintiff was unable to post the required bail and was remanded to the custody of the municipal defendant's Department of Correction ("DOC").

18. The plaintiff was required to return to court thereafter.

19. Plaintiff was held in custody by the DOC until November 15, 2010, when he was finally released on bail.

20. On December 6, 2010, the court dismissed all of the charges against plaintiff and the prosecution was terminated in plaintiff's favor.

21. At all times relevant herein, each of the defendants, were acting within the scope of their employment with the NYPD and the City of New York, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

22. Plaintiff repeats each and every allegation of paragraphs "1" through "21" of the complaint as if incorporated and reiterated herein.

23. Defendants willfully and intentionally (i) seized and arrested plaintiff without cause, and without a reasonable basis to believe such cause existed, (ii) maliciously subjected plaintiff to prosecution, (iii) engaged in the malicious use and abuse of process, and

(iv) fabricated evidence against the plaintiff in order to deny him the right to a fair trial, and in so doing, violated and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution.

24. By reason thereof, defendants have violated 42 U.S.C. § 1983 and caused plaintiff to be deprived of his federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## SECOND CAUSE OF ACTION

25. Plaintiff repeats each and every allegation of paragraphs "1" through "26" of the complaint as if incorporated and reiterated herein

26. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned or otherwise tacitly sanctioned by the municipal defendant designed to increase the number of arrests being made, without regard to whether probable cause existed for these arrests.

27. More precisely, under this policy or plan, officers within the Narcotics Bureau are encouraged or pressured to make as many arrests as possible, which has caused and will continue to cause, its officers, including the individual defendants and their colleagues within NBMN, to make arrests regardless of whether there was any factual basis for the charges. The officer(s) would then fabricate claims of having seen the person(s) being arrested in possession of illegal narcotics or otherwise engaged in criminal activity.

28. The purpose of this policy or plan was to generate large numbers of arrests within the Narcotics Bureau generally, and, more specifically, within the individual commands therein, in order to create a false or misleading impression of positive activity by their officers.

29. In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

30. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

31. Rather than take steps to abolish this plainly unconstitutional and unlawful police, the municipal defendant continued to tacitly endorse this policy of deliberate misconduct.

32. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer

Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

33. In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

34. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

35. Moreover, tape recordings made of senior commanders within the 81 precinct as referenced in the litigation *Schoolcraft v. City of New York*, 10 CV 6005 (RWS) and newspaper accounts of the recordings, demonstrate the existence of arrest and summons

quotas generally within the NYPD and that NYPD officers are expected to meet these quotas regardless of the legitimacy of the arrests and summonses.

36. It is also manifestly clear through the litigation brought in the Eastern and Southern Districts of New York that countless hundreds, if not thousands, of civilians have alleged that members of the Narcotics Bureau, as well as other commands within the NYPD, have deliberately arrested them without probable cause. Thus, even if the municipal defendant was not the architect of the policy causing these unlawful arrests, they were certainly on notice of the practice.

37. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice was deliberately indifferent to the risk that the undue emphasis inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

38. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the defendants jointly and severally as follows:

i. Actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii. Actual damages against the City of New York in an amount to be determined at trial;

iii. Statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

iv. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
March 05, 2013

REIBMAN & WEINER

By: ______________________________

Michael Lumer, Esq. (ML-1947)
Attorneys for Plaintiffs
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743